**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

DARRELL S.,[1]

                Plaintiff,

    v.                                                   **DECISION AND ORDER**
                                                                   21-CV-6009

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

      Plaintiff Darrell S. ("Plaintiff") brings this action seeking review of the Commissioner of Social Security's final decision that denied his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA") and Supplemental Security Income ("SSI") under Title XVI of the SSA. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. 8, 9. Plaintiff also filed a response brief. Dkt. 11.

      The Court assumes the parties' familiarity with the administrative record, the parties' arguments, and the standard of review, to which the Court refers only as necessary. *See Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998) (summarizing the standard of review and the five-step sequential evaluation process that Administrative

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify Plaintiff using only his first name and last initial, in accordance with this Court's Standing Order issued November 18, 2020.

1

Law Judges ("ALJs") are required to use in making disability determinations); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (same).  Upon consideration of the record, and for the reasons set forth below, the Court grants Plaintiff's motion in part and denies the Commissioner's cross-motion.  The decision of the Commissioner is vacated and the matter is remanded for further administrative proceedings consistent with this Decision and Order.

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on June 25 and 22, 2018, respectively, alleging disability beginning on October 4, 2017.  Tr. 216-28.[2]  Plaintiff identified the following conditions as limiting his ability to work: (1) chronic foot pain, (2) diabetic neuropathy, (3) chronic post-traumatic stress disorder, (4) adjustment disorder with mixed anxiety and depression, (5) generalized anxiety disorder, (6) irritable bowel syndrome, (7) hypertension, and (8) high cholesterol.  Tr. 238.  His applications were initially denied on August 28, 2018.  Tr. 135-42.

Plaintiff requested an administrative hearing on September 25, 2018.  Tr. 143-44.  On January 9, 2020, Plaintiff appeared with his attorney and testified at a video hearing; a Vocational Expert ("VE") testified by phone.  Tr. 21-82.  On March 25, 2020, the ALJ issued an unfavorable decision finding Plaintiff was not disabled within the meaning of the SSA.  Tr. 113-34.

The ALJ determined that Plaintiff had severe impairments of (1) hypertension, (2) type II diabetes mellitus, (3) diabetic polyneuropathy, (4) gammopathy, (5) degenerative

---

[2] "Tr. __" refers to pages of the administrative transcript, specifically the pagination located at the bottom right-hand corner of the transcript.

joint disease of the feet, (6) irritable bowel syndrome, (7) depression, (8) post-traumatic stress disorder, and (9) adjustment disorder.  Tr. 118.  After concluding that Plaintiff's impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1, the ALJ determined Plaintiff's Residual Functional Capacity ("RFC") to be at the sedentary level,[3] with additional limitations.

Specifically, the ALJ found that Plaintiff could frequently handle, finger, or feel bilaterally; he could occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; he was unable to operate push or pull controls with the lower extremities; he could not climb ladders, ropes, or scaffolds; he must avoid concentrated exposure to extreme heat, humidity, excessive vibration, and hazards, including unprotected heights and dangerous machinery; he could perform simple, routine tasks in low-stress work environments, where low-stress was defined as jobs having only occasional decision-making and occasional changes in the work setting; he could have occasional contacts with co-workers or supervisors, but should not have either telephonic or in-person contact with the public; and he required the option to wear his Nike sneakers.  Tr. 121.

On April 27, 2020, Plaintiff requested review by the Appeals Council.  Tr. 213-15.  On November 6, 2020, his request for review was denied by the Appeals Council.  Tr. 1-6.  The ALJ's decision thus became the Commissioner's final decision.  *See* 20 C.F.R. §§ 404.981, 416.1481.

---

[3] Sedentary work is defined by agency regulations as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

**DISCUSSION**

1. **Standard of Review**

The Court reviews the record to determine only whether the Commissioner applied the correct legal standards and whether substantial evidence supports the Commissioner's final decision.  42 U.S.C. § 405(g).  "'Substantial evidence' is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

2. **Development of the Record: Physical Impairments**

Plaintiff argues that the ALJ essentially rejected the only medical opinion of record regarding his physical condition, the reviewing opinion of Dr. A. Saeed, who concluded that Plaintiff was capable of performing light work.  Because it is clearly established that an ALJ may not render an RFC based on his lay opinion, as opposed to relying on an actual medical assessment, when a claimant suffers from multiple severe impairments, Plaintiff contends that this RFC determination was not supported by substantial evidence.

In response, the Commissioner argues that the ALJ did not reject Dr. Saeed's opinion; rather, the ALJ found his opinion partially persuasive because they agreed that Plaintiff could perform "some work."  Additionally, the Commissioner argues that the ALJ did not rely on his lay assessment of medical evidence in the record, but rather he appropriately and comprehensively considered the evidence.

It is settled law that "whether the ALJ met the duty to develop the record is a threshold question before determination of whether the ALJ's conclusions are supported

4

by substantial evidence[.]"  *Miller v. Comm'r*, 18-CV-450, 2019 WL 3780085, 2019 U.S. Dist. LEXIS 135623, *10 (W.D.N.Y. Aug. 12, 2019) (citations omitted); *see also Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982).

Regardless of whether a claimant is represented by counsel, the well-established rule is that ALJs must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).  While the Commissioner is empowered to make RFC determinations, "[w]here the medical findings in the record merely diagnose claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner generally "may not make the connection himself."  *Wilson v. Colvin*, 13-CV-6286, 2015 WL 1003933, *21, 2015 U.S. Dist. LEXIS 27804 (W.D.N.Y. Mar. 6, 2015) (citation omitted).

There are no opinions in the record from any of Plaintiff's treating physicians regarding his physical limitations.  The record contains only one prior administrative medical report pertaining to Plaintiff's physical impairments – the reviewing opinion of Dr. Saeed; however, the Court adopts Plaintiff's view and finds that the ALJ rejected this opinion, despite categorizing it as "partially persuasive."  Tr. 127.

Dr. Saeed, a medical consultant from the Disability Determination Service, reviewed medical records that had been submitted prior to issuance of his August 7, 2018 report, but did not personally examine Plaintiff.  As summarized by the ALJ, Dr. Saeed concluded that Plaintiff was capable of "the full range of light exertional level[4] work."  Tr. 127 (citing generally to Tr. 83-110).

---

[4] Light work is defined by agency regulations as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even

5

The ALJ explained that he found this opinion "partially persuasive" insofar as it was "supported by the records available at the time," despite subsequent records supporting a more restrictive RFC determination. Tr. 127. This justification troubles the Court for multiple reasons.

First, records available to Dr. Saeed from Plaintiff's treating physician Thomas Pieklo, DPM opine that Plaintiff's neuropathy "is so severe that this is the major reason for his foot pain," despite his additional podiatric diagnosis. Tr. 308. One month later, in March 2018, Dr. Pieklo noted that he advised Plaintiff "there is no cure for the neuropathy and the best that could be done would be to take off some of the edge of the tingling, burning and constant nerve pain, needle and pin like feeling that is created in his feet." Tr. 307. His treatment notes from March 2018 also reflect balance problems due to Plaintiff's neuropathy and numbness in his feet. And in April 2018, Dr. Pieklo's notes indicate that the Neurontin he had prescribed Plaintiff "did not seem to help with the neuropathy" and as such, would be discontinued. Tr. 306.

Second, the June 14, 2017 treatment records provided to Dr. Saeed from Plaintiff's primary physician, Daniel Curtin, MD, state that Plaintiff experienced "less foot numbness" after starting insulin; however, the records do not quantify either Plaintiff's then-current or previous numbness, or indicate related pain levels. Tr. 505. Dr. Curtin's treatment notes from February 7, 2018 likewise note ongoing "diabetes with

---

though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

neuropathy" but do not relate the diagnoses to specific residual functional capabilities. Tr. 490.

Three additional sets of treatment records were provided by unidentified sources for Dr. Saeed and the psychological consultant from the Disability Determination Service, S. Bhutwala, PhD, to review.  TR. 85-6, 99-100.  As they were not identified, this Court cannot ascertain whether they supported Dr. Saeed's opinion, and neither could the ALJ.

Finally, it is also unclear whether Dr. Saeed reviewed the treatment records or mental RFC assessment provided for review by Noyes Mental Health Clinic.  If he did, he should have noticed that Plaintiff repeatedly complained of severe foot pain, and shared that he was advised he could not have any foot surgery due to his diabetes.  Tr. 319, 328, 353.  Additionally, there is note in the treatment records from Plaintiff's April 24, 2018 therapy session that he was "having a tough time with numbness in his hands today."  Tr.  340.  Plaintiff also reported during that session that his left leg "went numb from the knee on down this week.'"

In light of the foregoing, the ALJ's determination that Dr. Saeed's opinion was "supported by the records available at the time" is inaccurate.  It is difficult, if not impossible, to understand how Dr. Saeed assessed Plaintiff as capable of performing light work.  Moreover, it is troubling that a consultative physical examination of Plaintiff was not ordered, especially as his physical impairments were already worsening prior to issuance of Dr. Saeed's opinion.

Put another way, as correctly noted by the ALJ, the record evidence does indicate that Plaintiff's neuropathy worsened over time.  However, because the record

was not sufficiently developed, there is inadequate record evidence to support the ALJ's conclusion that an RFC of sedentary work with the noted restrictions properly accounted for Plaintiff's physical impairments and associated pain.

### 3. Development of the Record: Psychological Impairments

The Court next addresses the ALJ's assessment of Plaintiff's mental impairments. The ALJ found that the May 24, 2018 opinion of Diane Smith, MS, ATR-BC, LCAT, Plaintiff's then-treating therapist, was "unpersuasive." Tr. 126 (citing incorrectly to Exhibit 14F for her opinion, which is found within Exhibit 2F at Tr. 350-53). To account for his determination, the ALJ noted that Ms. Smith had only a short treatment history with Plaintiff at the time her opinion was rendered, and he had "not yet been regulated on psychotropic medication."

According to the records before the Court, Ms. Smith had engaged in seven counseling sessions with Plaintiff, each approximately one hour long, prior to rendering her opinion on a form entitled "Mental Residual Functional Capacity Assessment." Tr. 350-53. She assessed Plaintiff with extreme limitation interacting with supervisors and co-workers and marked limitation adapting and managing himself. Tr. 352-53. Ms. Smith also opined that Plaintiff's impairments would substantially interfere with his ability to work on a regular and sustained basis at least 20% of the time, and that he would miss work approximately 15-20 days per month due to his mental impairments, including treatment of the same. Tr. 353.

Furthermore, the ALJ failed to articulate when he deemed Plaintiff to have been "regulated on psychotropic medication." Based on treatment records, Plaintiff had been prescribed and was treating daily with Escitalopram by at least March 2018 as well as

Seroquel by June 2018.  Tr. 436, 441.  The Court also finds that Plaintiff's behavior during the January 2020 administrative hearing was not persuasive evidence that he had been "regulated," per se.  Moreover, the absence of any acknowledgement in the ALJ's decision of the unusually contentious exchanges between the ALJ and the Plaintiff is tantamount to ignoring relevant evidence in light of his findings that Plaintiff had severe impairments of (1) adjustment disorder, (2) post-traumatic stress disorder, and (3) depression.  Tr. 118.

With respect to the August 27, 2018 opinion of Disability Determination Service psychological review consultant S. Bhutwala, PhD, and the August 20, 2018 opinion of consultative psychologist Agnes Jonas, Psy. D., the ALJ determined that both were "partially persuasive."  Tr. 127.  Dr. Jonas conducted a single, in-person evaluation of Plaintiff and concluded that his psychiatric conditions – which she diagnosed as major depressive disorder, moderate to severe, and marijuana use disorder – were unstable, expected to continue for "one year to more than a year," and recommended that Plaintiff double the frequency of his outpatient therapy.  Tr. 597.  Dr. Jonas further assessed Plaintiff as having (1) marked limitation regulating emotions, controlling behavior, and maintaining well-being, (2) moderate to marked limitation interacting adequately with supervisors, co-workers, and the public, and (3) moderate limitation using reason and judgment to make work-related decisions.  Tr. 596.  Dr. Bhutwala's non-examining opinion relied on Dr. Jonas's opinion, and the ALJ found it "consistent with longitudinal mental health records noting improved anxiety and mood symptoms with medication and intermittent therapy."  Tr. 127.

9

The Court notes that the ALJ found Plaintiff suffered from the severe impairment of post-traumatic stress disorder; however, neither Dr. Jonas nor Dr. Bhutwala diagnosed Plaintiff with that condition.  Plaintiff's post-traumatic stress disorder was actually diagnosed by Ms. Smith, which indicates the ALJ did not find her opinion entirely unpersuasive.

In sum, the ALJ failed to adequately articulate why he found the opinions of Dr. Bhutwala and Dr. Jonas "partially persuasive" and the opinion of Ms. Smith "unpersuasive."  And although an ALJ may support their RFC determination based on the contemporaneous treatment notes of a medical provider, those notes must provide information relevant to a claimant's ability to perform sustained gainful employment. *See Monroe v. Commr. of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017).  Here, the ALJ failed to support his RFC determination with references to evidence in the treatment records that Plaintiff had consistently improved anxiety and other psychological conditions.

The ALJ's treatment of each of the medical opinions created a gap in the record as to both Plaintiff's physical and psychological impairments.  Without reliance on a medical source statement, consultative examination, or other medical analysis of Plaintiff's functional limitations, the ALJ necessarily relied on his own lay opinion to determine Plaintiff's RFC, which constitutes an error requiring remand.  *See Judd v. Berryhill*, 17-CV-1188, 2018 WL 6321391, *7, 2018 U.S. Dist. LEXIS 205177 (W.D.N.Y. Dec. 4, 2018).

Because the ALJ failed to meet his affirmative duty to develop the record, remand is warranted for this purpose.  The ALJ should obtain medical source

statements regarding Plaintiff's limitations during the pertinent time period, and/or independent functional capacity examinations.  On remand, the ALJ should also reconsider at Step 2 whether Plaintiff's peripheral neuropathy meets the criteria of a severe impairment as described in 11.14(B) of 20 C.F.R. § 404, Subpart P, Appendix 1.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is GRANTED in part, insofar as remand was requested, the Commissioner's cross-motion for similar relief and motion in opposition (Dkt. 9) is DENIED, and the Commissioner's final decision is VACATED and the case is REMANDED for further administrative proceedings consistent with this Decision and Order.  The Clerk of the Court shall take all steps necessary to enter judgment and close the case.

**IT IS SO ORDERED.**

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: May 22, 2023
       Buffalo, New York